[Cite as *State v. Pauley*, 2019-Ohio-2368.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-18-1099

    Appellee                                     Trial Court No. CR0201702526

v.

Stephen Joseph Pauley, Sr.                       **DECISION AND JUDGMENT**

    Appellant                                    Decided: June 14, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**SINGER, J.**

## Introduction

{¶ 1} Appellant, Stephen J. Pauley, Sr., appeals from the April 16, 2018 judgment of the Lucas County Court of Common Pleas, where he was sentenced to three years of incarceration for domestic violence in violation of R.C. 2919.25(A) and (D)(4). For the reasons that follow, we reverse and remand.

**Background**

{¶ 2} On August 31, 2017, appellant was indicted for domestic violence under R.C. 2919.25(A) and (D)(4), and for violating a protection order under R.C. 2919.27(A)(1) and (B)(4), both being felonies of the third degree. He pleaded not guilty on September 12, 2017. On March 26, 2018, appellee, the state of Ohio, entered a nolle prosequi as to the charge for violation of a protective order. The trial on the remaining domestic violence charge proceeded.

{¶ 3} The indictment alleged appellant caused physical harm to a household member on June 27, 2017. The victim was appellant's alleged ex-girlfriend and, according to her testimony, she lived with appellant in 2014 and 2016. Specifically she claimed they were homeless together, but that they were intimate and stayed in places such as a communal apartment for two months in 2014, and an abandoned trailer for five months in 2016.

{¶ 4} While allegedly living in the abandoned trailer together in 2016, appellant was charged for two assaults against the victim. Certified journal reports submitted in the record reflect that in August 2016, appellant was charged with negligent assault in violation of R.C. 2903.14(A); and in November 2016, appellant was charged with assault in violation of R.C. 2903.13(A). The victim confirmed that she called the police, had appellant arrested, and was indeed the victim in these past two assaults. Appellant was convicted in both. The victim also stated she sought a protection order against appellant in March 2017.

2.

{¶ 5} With respect to the July 2017 attack, the victim was allegedly walking to the bus stop in downtown Toledo, Ohio. She testified appellant saw her and attacked her, punching her, bringing her to the ground, and stomping on her neck. The victim said she got away, and that the police were then called by a nearby friend.

{¶ 6} Officer Robert Tyburski testified that he met the victim after the attack, and that he reported and documented her injuries. He described her as crying, upset and shaking. He noted she had fresh bruising around her eye and neck, and that she identified appellant as the attacker. Photographs were submitted in the record showing these reported injuries.

{¶ 7} Tyburski also testified that, in evaluating with what to charge appellant, he contacted the detective to investigate it as a felony under R.C. 2919.25(D)(4), as follows:

> **[Prosecutor]:** Why did you contact the detective bureau?
>
> **[Tyburski]:** There was a previous domestic between the two at the time that this incident had taken place, though, no domestic relationship had been determined between the two. At the time of this incident, they were no longer living together and they did know (sic) have children together at this time.
>
> **[Prosecutor]:** Okay. But they had in the past?
>
> **[Tyburski]:** Yes.

{¶ 8} Appellant's counsel did not object to Tyburski's conclusory statements, and Officer Vince Mauro from the detective bureau subsequently testified similarly.

3.

**{¶ 9}** Mauro testified that he charged appellant with felonious domestic violence pursuant to R.C. 2919.25(D)(4), for the June 2017 attack, because he phoned the victim after receiving the report and she stated that she lived with appellant for those four months in 2016, which was when appellant was charged with the two separate assaults against her. Mauro also noted that he saw the civil protection order in the system filed against appellant in March 2017, and that "the actual document that was filed in the court, * * * had indicated that they lived together and * * * I [(Mauro)] went ahead and filed a felony."

**{¶ 10}** Mauro further testified that not "only domestic violence prior convictions" could be used "for charging domestic violence felonies in the future." He explained that "as long as it is an assault against a person, that's significantly the same as a domestic violence charge, and they were living together and that type of relationship, you could use that as well." Appellant's counsel did not object to Mauro's statements or legal and factual conclusions.

**{¶ 11}** Prior to trial, appellee and appellant agreed he would take a polygraph test, and they stipulated to the admissibility of the results. He took it on January 25, 2018, and polygraph examiner Steven Stechschulte testified that appellant failed to respond honestly to three variations of the same question: did you hit, assault, or do anything to cause injuries to the victim on June 27th, 2017?

4.

{¶ 12} Appellee presented the four witnesses noted, including the two officers, the victim, and the polygraph examiner, but also submitted the photographs of the injuries and the certified journal entries reflecting appellant's 2016 assault crimes.

{¶ 13} Appellant presented his own testimony. He contradicted the victim's testimony about their living arrangements in a communal apartment in 2014, and in the abandoned trailer in 2016. He completely denied ever living with the victim. More specifically, he claimed they may have had sex on occasion, but that he never stayed with her overnight for more than two or three consecutive nights. He testified that he lived at a homeless shelter during 2014, not a communal apartment, and that during 2016, he lived with his boss at an address where he and the victim both received mail. When asked about the address, the victim testified to her knowledge appellant never lived with his boss at that address, and that it was solely a mailing address for them.

{¶ 14} The case proceed to jury deliberations and, on March 27, 2018, the jury found appellant guilty of the felonious domestic violence pursuant to R.C. 2919.25(A) and (D)(4). The court accepted the verdict and set the matter for sentencing.

{¶ 15} On April 10, 2018, appellant was sentenced to three years of incarceration, and was held subject to three years mandatory postrelease control. The court found appellant could pay the court-imposed costs of supervision, confinement, assigned counsel, prosecution, and of those costs assessed pursuant to R.C. 9.92(C), 2929.28 and 2951.021.

{¶ 16} The trial court journalized its judgment on April 16, 2018. Appellant timely appeals.

## Assignments of Error

{¶ 17} Appellant asserts the following assignments of error:

1. The guilty verdict was against the manifest weight of the evidence.

2. The jury instructions regarding the necessary element of prior offenses were insufficient and prejudicial, depriving appellant of Due Process.

3. The trial court abused its discretion in ordering appellant to pay the costs of appointed counsel confinement and supervision.

## Second Assignment of Error

{¶ 18} We find our disposition of the second assigned error renders the remaining assignments of error moot. *See* App.R. 12(A)(1)(c).

{¶ 19} In his second assigned error, appellant asserts plain error claiming the jury instructions were defective with regard to the necessary element of prior offenses. Appellee contends appellant cannot show the outcome would have been different.

{¶ 20} Plain error or defects affecting substantial rights may be noticed on appeal although they were not brought to the attention of the trial court. *See generally State v. Long*, 53 Ohio St.2d 91, 94-98, 372 N.E.2d 804 (1978), citing Crim.R. 52.

6.

{¶ 21} R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(F)(1)(i) provides that "[f]amily or household member" means * * * a person living as a spouse[.]" R.C 2919.25(F)(2) clarifies that a "[p]erson living as a spouse" includes a person who "has cohabitated with the offender within five years prior to the date of the alleged commission of the act in question."

{¶ 22} R.C. 2919.25(D)(4) states, in pertinent part:

> If the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses, a violation of division (A) or (B) of this section is a felony of the third degree[.]

{¶ 23} In relevant part, the offenses described in division (D)(3) include those held to be "substantially similar to domestic violence." *See* R.C. 2919.25(D)(3).

{¶ 24} Appellant writes with emphases in bold in his brief, particularly taking issue with the following jury instructions given by the trial court:

> Use of a prior conviction: There was evidence of the defendant's prior convictions of assault. **This evidence was received only for the limited purpose to prove that the defendant has been previously convicted of crimes of violence against a family or household member**

7.

* * *.  It was not received and you may not consider it to prove that the defendant committed domestic violence on or about June 27, 2017. * * *

There are five elements that must be proved beyond a reasonable doubt before the defendant can be found guilty of domestic violence.  They are:  1. That on or about June 27, 2017.  2. And in Lucas County, Ohio. 3. The defendant did knowingly cause or attempt to cause.  4. Physical harm to another, to wit: [the victim,] a family or household member. 5. **And the defendant has been previously convicted of prior crimes of violence against a family member or household member** * * *.

{¶ 25} Appellant correctly recognizes that, to properly convict him under the relevant part of R.C. 2919.25(D)(4), appellee must show that appellant's prior assault convictions were for crimes "substantially similar" to domestic violence, and that the related offenses were committed against a "family or household member."  *See* R.C. 2919.25(D)(4).

{¶ 26} Appellee concedes the jury instructions did not fully list out the elements of the offense by including all qualifying enumerated offenses listed in R.C. 2919.25(D)(3).

{¶ 27} Based on our review, we agree with appellant and find that the trial court incorrectly implied that appellant's two 2016 assault convictions were substantially similar to crimes of domestic violence against a household member without further instruction on what the jury must find.

8.

{¶ 28} "An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 56.

{¶ 29} Appellant argues he was prejudiced because the jury was relieved of its role as trier-of-fact, and that the convictions would not have otherwise been found to be substantially similar to domestic violence convictions. His testimony contradicted the victim's testimony regarding their living arrangements. It is the jury's responsibility to reconcile the opposing testimony.

{¶ 30} We determine the court committed plain error with its jury instructions, by failing to provide adequate instruction on what the jury must find and limiting the jury's role of finding appellant guilty beyond a reasonable doubt of all elements of the crime charged.

{¶ 31} Accordingly, appellant's second assigned error is well-taken.

## Conclusion

{¶ 32} The April 16, 2018 judgment of the Lucas County Court of Common Pleas is reversed, and the matter is remanded to the trial court to proceed in a manner consistent with this decision. Appellee is ordered to pay the costs of this appeal. *See* App.R. 24.

Judgment reversed.

9.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.